UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUSSELL MAISANO,

        Plaintiff,

v.

STERLING HEIGHTS DODGE,
INC., et al.,

        Defendants.
                                      /

Case No. 2:18-cv-10702

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
GRANTING IN PART AND DENYING
IN PART MOTION FOR RELIEF FROM
ORDER OR CERTIFICATION TO SIXTH CIRCUIT [59]**

    In March 2020, the Court granted in part and denied in part Defendants' summary judgment motion. ECF 45. Since then, the present case has stalled because administrative orders from the Chief Judge of the Eastern District of Michigan have restricted the Court's power to convene a jury during the COVID-19 pandemic. *See, e.g.*, E.D. Mich. 20-AO-059, 20-AO-038 (REVISED).[1] Although the present case is not even the oldest civil case that the Court has awaiting a jury trial, the Court has prioritized it for trial because the Court is mindful about how many failed mediations

---

[1] The administrative orders have not only stalled the present case but have also stalled many cases on the Court's docket. For example, despite currently having several criminal defendants and six civil cases awaiting jury trials, the Court has only been allowed to conduct one jury trial—an October 2021 criminal jury trial for a defendant who had been in custody since February 2018.

1

and motions the parties have endured to resolve the dispute. *See* ECF 43; 46; 51; 54; 59.

In August 2021, the Court held a status conference to help resolve the case. After the conference, Plaintiff moved for relief from the summary judgment order or for the Court to certify the order for interlocutory appeal. ECF 59. The parties fully briefed the motion. ECF 61; 62.

Since then, the Court's staff has requested and worked with the Jury Department in the Eastern District to schedule a jury trial for the present case. The Jury Department has recently arranged a jury trial to start on April 20, 2022.

The Court conducted a status conference on this matter and the pending motion on February 7, 2022. Accordingly, the Court will not have a hearing on the pending motion and will resolve the motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons below, the Court will grant in part and deny in part Plaintiff's pending motion.

## BACKGROUND

In the interest of judicial economy, the Court adopts the background section of the summary judgment order. ECF 45, PgID 1416–18. The Court granted summary judgment to Defendants as to the Family Medical Leave Act ("FMLA") interference and retaliation claims. *Id.* at 1420–26. The Court also granted summary judgment to Defendants on the Americans with Disabilities Act ("ADA") claims for failure to accommodate, termination based on disability, and retaliation. *Id.* at 1426–31. And the Court granted summary judgment to Defendants on the Age Discrimination

Employment Act ("ADEA") discrimination claim based on Plaintiff's termination. *Id.* at 1431–36. But because Defendants did not move for summary judgment as to Plaintiff's denial of bonuses under the FMLA, ADA, and ADEA, those claims remained. *Id.* at 1419.

Defendants later moved for the Court to reconsider the bonuses claims. ECF 46. The Court denied the motion in part because "[a] denial of a bonus can form a proper basis for a cause of action under [the FMLA, ADA, or ADEA]." ECF 47, PgID 1451. The Court also denied the motion because Defendants' substantive arguments were improperly raised for the first time in the reconsideration motion. *Id.*

## LEGAL STANDARD

Plaintiff has asked that the Court vacate the summary judgment order under Federal Rule of Civil Procedure 54(b). ECF 59, PgID 1580–82. Rule 54(b) provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry" of a final judgment. Under the Rule, courts have "significant discretion" to review interlocutory orders. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 n.7 (6th Cir. 2004). But courts should not take the task of revising previous orders lightly. Public policy dictates "that litigation be decided and then put to an end," and courts should deviate from their prior rulings only when they find "some cogent reason" to do so. *Petition of U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973) (citation omitted). If a court deviates from a prior ruling, it "may modify[] or

3

even rescind" it. *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (citing *Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1992)).

Courts will revisit an interlocutory order "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959 (citation omitted).

## DISCUSSION

Because Plaintiff has not revealed new evidence, the Court will first address whether there has been an intervening change of controlling law. After, the Court will resolve whether it must correct a clear error. Last, the Court will assess whether there is a need to prevent manifest injustice.

I. Intervening Change of Controlling Law

Plaintiff cited many recent Sixth Circuit and district court cases to show an intervening change of controlling law. ECF 59, PgID 1585–89. But unpublished Sixth Circuit opinions do not "constitute [] 'intervening change[s] in controlling law'" because the opinions are not binding on the Court. *Malam v. Adducci*, 481 F. Supp. 3d 631, 636 (E.D. Mich. Aug. 25, 2020) (citation omitted); *see* ECF 59, PgID 1588–89. Put simply, non-binding opinions are not *controlling* law. *Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011). The same reasoning applies to the district court cases that Plaintiff cited. *See* ECF 59, PgID 1588. All told, the only published Sixth Circuit cases that Plaintiff cited as intervening changes in controlling law are *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409 (6th Cir. 2020) and *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292 (6th Cir. 2019). ECF 59, PgID 1585, 1587.

4

Yet Defendants claimed that the Court cannot revisit the summary judgment ruling because of the law-of-the-case doctrine. ECF 61, PgID 1609–10. "The purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same* case in the same court should lead to the same result." *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (emphasis in original and omitted) (citation omitted). Even so, "a law-of-the-case finding may be disturbed based on an intervening change of law." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 527 F. Supp. 3d 961, 972 (E.D. Tenn. 2021) (citing *Ent. Prods., Inc. v. Shelby Cnty.*, 721 F.3d 729, 742 (6th Cir. 2013)). The Court will therefore address *Fisher* and *Morrissey* in turn.

*Fisher* is not an intervening change of controlling law because it did not *change* Sixth Circuit law; the three-judge panel merely applied existing Sixth Circuit law to the facts in the case. *See* 951 F.3d at 421 ("'Once an employee requests an accommodation, the employer has a duty to engage in an interactive process.' From that point, 'both parties have a duty to participate in good faith.'") (quoting *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007)). After all, "only the Court sitting en banc may overrule published circuit precedent, absent an intervening Supreme Court decision or a change in the applicable law." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 507 (6th Cir. 2004) (italics omitted).

As for *Morrissey*, the case is no doubt intervening controlling law because it is published Sixth Circuit case law released after Plaintiff's response to the summary

judgment motion. But *Morrissey* did not *change* controlling law; it follows the case law that the Court relied on to resolve the summary judgment motion.

At its core, *Morrissey* reaffirmed a prior Sixth Circuit holding that ADA "claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." 946 F.3d at 298 (quoting *Kleiber*, 485 F.3d at 868). *Morrissey* also cited *EEOC v. Dolgencorp, LLC*, 899 F.3d 428, 435 (6th Cir. 2018) for the same holding. *Id.* at 298 n.5. And Plaintiff cited both *Kleiber* and *Dolgencorp* in his response to the summary judgment motion. ECF 40, PgID 881 (*Kleiber*), 882–83 (*Dolgencorp*). Beyond that, Plaintiff's summary judgment brief noted the same holding that direct evidence of a failure to offer a reasonable accommodation can show discrimination. *Id.* at 882–83 (citing *Dolgencorp, LLC*, 899 F.3d at 434–35). At bottom, Plaintiff's summary judgment brief cited controlling case law that does not differ from *Morrissey*. Without an intervening change of controlling law, the Court will now address whether the summary judgment order had a clear error.

II. <u>Clear Error</u>

Plaintiff argued that the Court should not have granted summary judgment on the FMLA and ADA claims. Plaintiff first stressed that the FMLA retaliation and interference claims should proceed to trial because the Court erred when it found that Plaintiff never asked to extend his FMLA leave. ECF 59, PgID 1587–89. For the ADA claim, Plaintiff explained that the Court erred when it found that Plaintiff did not show direct evidence of his employer's failure to accommodate. *Id.* at 1587–88. After

6

reviewing the parties' briefs, the summary judgment order, and the summary judgment briefs, the Court did not clearly err when it granted judgment on the FMLA claims. But the Court did clearly err when it granted summary judgment on the ADA failure to accommodate claim and it must correct the error.

    A.    *FMLA Interference*

The Court granted summary judgment to Defendants on the FMLA interference claim on two grounds. First, the evidence showed that Plaintiff could not have returned to work within twelve weeks after his proposed start date. ECF 45, PgID 1421–22. Second, no genuine issue of material fact showed that Plaintiff requested to extend FMLA leave. *Id.* at 1422–24. Plaintiff's motion alleged only that the second reason the Court relied on was a clear error. *See* ECF 59, PgID 1587–89. Because the first reason is enough to grant summary judgment for the FMLA interference claim and because it was not a clear error, the Court will not vacate the summary judgment order as to the FMLA interference claim.

As the Court pointed out, Plaintiff offered only his own testimony to show that he could return to work within twelve weeks of when his FMLA leave would have ended. ECF 45, PgID 1422; *see also* ECF 40, PgID 888 (citing Plaintiff's deposition and declaration). But Plaintiff's own testimony—without more—is not enough to show that he could return to work. ECF 45, PgID 1422 (citing *Randolph v. Detroit Pub. Schs.*, No. 15-13975, 2017 WL 1077673, at *3 (E.D. Mich. Mar. 22, 2017) (collecting cases) and *Hyldahl v. Mich. Bell Tel. Co.*, 503 F. App'x 432, 439 (6th Cir.

2012)). Based on the Court's review of the case law, the finding was not a clear error, and thus the Court need not set aside the order as to the FMLA interference claim.

### B. *FMLA Retaliation*

The Court granted summary judgment to Defendants on the FMLA retaliation claim for two reasons. First, Plaintiff "did not provide evidence of a causal connection between his protected FMLA activity and" being fired. ECF 45, PgID 1425. And "[e]ven if Plaintiff could establish a causal connection, Defendants met their burden of articulating a legitimate reason why they fired Plaintiff." *Id.* Based on the case law and parties' briefs, granting summary judgment to Defendants on the FMLA retaliation claim was not a clear error.

As the order explained, Plaintiff's failure to "return to work within several weeks after his FMLA leave expired" was a legitimate reason to fire Plaintiff. *Id.* Indeed, the Sixth Circuit has "held that 'an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave.'" *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (quotation omitted). And as the Court noted earlier, no genuine dispute of material fact exists that Plaintiff could not return to work. Because Plaintiff could not refute the legitimate reason as pretext, it was not a clear error to grant summary judgment on the FMLA retaliation claim. ECF 45, PgID 1425 ("[A]lthough Plaintiff provided evidence that Sal and Nino had animosity towards him, the evidence demonstrated that their animosity long predated, and was unrelated to, Plaintiff's health problems.") (citations omitted).

8

### C. *ADA Failure to Accommodate*

The Court made a clear error in the summary judgment order as to the ADA failure to accommodate claim. ECF 45, PgID 1426–28. Plaintiff had two theories of recovery. First, Plaintiff believed his employer failed to accommodate when it forced him to take FMLA leave despite his ability to work part-time. *Id.* at 1427 (citing ECF 40, PgID 881). Second, Plaintiff believed that his employer failed to accommodate when it denied his request for more leave after his FMLA leave expired. *Id.* (citing ECF 40, PgID 881). The Court granted summary judgment to Defendants on both theories. *Id.* at 1427–28.

In the present motion, Plaintiff suggested that the Court relied only "on the framework for analyzing claims brought under the *indirect* method" rather than "under the *direct* method" found in *Morrisey*. ECF 59, PgID 1587 (emphasis added). To show an ADA failure to accommodate claim based on direct evidence, Plaintiff must show that he is disabled and that he is "otherwise qualified for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation." *Kleiber*, 485 F.3d at 869 (cleaned up). If Plaintiff satisfies those requirements, then "[t]he employer . . . bear[s] the burden of proving that . . . a proposed accommodation will impose an undue hardship upon [it]." *Id.* (citation omitted). Although the Court relied on the direct method to resolve the failure to accommodate claim, ECF 45, PgID 1426–28, the Court's analysis was a clear error,

9

and the Court must vacate that part of the order. *See Rodriguez*, 89 F. App'x at 959 (citation omitted).

### 1. *First Theory*

Granting summary judgment on the first failure to accommodate theory was a clear error for three reasons. First, the Court's reasoning was inconsistent. For the FMLA interference claim, the Court found that "Plaintiff provided evidence to create a genuine dispute of material fact regarding whether he was forced to take leave when he was still willing and able to work" part-time. ECF 45, PgID 1421. In contrast, for the ADA failure to accommodate claim, the Court found that "Plaintiff failed to provide evidence to create a genuine dispute of material fact that [] the alleged withdrawal of his [part-time work schedule] accommodation . . . occurred." ECF 45, PgID 1427. Based on the Court's review of the evidence, the latter finding was in error; a genuine dispute of material fact exists about whether Defendants forced Plaintiff to prematurely take FMLA leave despite his ability to work part-time.[2]

Second, the Court misapplied Sixth Circuit law for a failure to accommodate claim based on direct evidence. The Court's order noted that Plaintiff's part-time work schedule was a reasonable accommodation under the ADA. ECF 45, PgID 1426–27 (citing 42 U.S.C. § 12111(9)(B)). And the Court's order explained that even if Defendants took away the reasonable accommodation and forced Plaintiff to take early FMLA leave, "[l]eave is itself a type of accommodation." ECF 45, PgID 1427

---

[2] See, for example, ECF 40-2, PgID 916, 923–24, 936, 946; ECF 40-5, PgID 1039–40; ECF 40-8, PgID 1184; ECF 40-9, PgID 1189.

10

(citing *Maat v. Cnty. of Ottawa*, 657 F. App'x 404, 412 (6th Cir. 2016). Put differently, the Court's order found that prematurely forcing Plaintiff on FMLA leave was a reasonable accommodation under the ADA. *See id.* But the finding lacks support in the case law.

The Sixth Circuit has held that "a medical leave of absence can constitute a reasonable accommodation *under appropriate circumstances.*" *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998) (emphasis added). And the circumstances when the Sixth Circuit has held medical leave is a reasonable accommodation involve an employee requesting an extension of medical leave—not an employer forcing an employee to take medical leave. *See id.* (holding that there was a genuine issue of material fact "whether granting further medical leave to [the employee] would have unduly burdened [the employer])"; *Cleveland v. Fed. Express Corp.*, 83 F. App'x 74, 79 (6th Cir. 2003) (same). And the circumstances when the Sixth Circuit has held medical leave is *not* a reasonable accommodation involve an employee requesting a long medical leave extension despite having no clear prospect for recovery. *See Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 (6th Cir. 2000); *Maat*, 657 F. App'x at 413–14; *Aston v. Tapco Int'l Corp.*, 631 F. App'x 292, 297–98 (6th Cir. 2015). None of those cases apply to Plaintiff's claim that he was forced to *prematurely* take FMLA leave and thus the Court's reliance on those cases was in error.

The Court should have instead adopted the earlier finding that "Plaintiff provided evidence to create a genuine dispute of material fact regarding whether he

11

was forced to take leave when he was still willing and able to work" part-time. ECF 45, PgID 1421. The finding would have satisfied Plaintiff's ADA failure to accommodate claim and placed the burden on his employer to show that the part-time work schedule would "impose an undue hardship upon [it]." *Kleiber*, 485 F.3d at 869 (citation omitted). And his employer offered no argument to meet that burden. *See* ECF 37, PgID 670–73 (arguing that Plaintiff could not show a failure to accommodate based on indirect evidence under the *McDonnell Douglas* framework); ECF 42, PgID 1380–82 (arguing that Plaintiff's request for new leave was not a reasonable accommodation).

Third, the Court's alternative reasoning for denying the first theory was incorrect. The Court found that even if Plaintiff were forced to take FMLA leave too early, it would "not form the basis for an ADA withdrawal of accommodation claim." ECF 45, PgID 1427. The Court explained that "Plaintiff did not allege or provide evidence that he sought to return to work after his FMLA leave expired and had his request to return to a part-time schedule denied." *Id.* But the finding improperly applied FMLA law to the ADA claim. As the Court put it, "[i]nvoluntary-leave claims 'ripen[] only when and if the employee seeks FMLA leave at a later date.'" *Id.* at 1420 (quoting *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007)). And although the finding is true for FMLA interference claims, the finding should not have affected whether Plaintiff raised a genuine issue of material fact as to his failure to accommodate claim under the ADA. *See Kleiber*, 485 F.3d at 869 (citation omitted).

12

In sum, the Court clearly erred when it granted summary judgment on the first failure to accommodate theory.

### 2. Second Theory

For the second failure to accommodate theory, the Court erred when it found that "Plaintiff provided no evidence that he ever actually sought an extension of his leave." ECF 45, PgID 1428; *see also id.* at 1423–24. Simply put, the Court's finding about whether Plaintiff requested an extension of FMLA leave should not impact whether Plaintiff sought an accommodation of additional leave under the ADA. Sixth Circuit "case law establishes no bright-line test for when the form of an employee's request is sufficiently clear to constitute a request for an accommodation." *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 407 (6th Cir. 2014). To that end, the Court read *Judge* to create a bright-line rule for leave requests, when it did not. ECF 45, PgID 1423 ("But a request for long-term disability benefits is not equivalent to a request for leave.") (citing *Judge*, 592 F. App'x at 408).

Rather than assess the claim based on whether Plaintiff had requested FMLA leave, the Court should have assessed whether he requested an accommodation under the ADA. Thus, the proper analysis would have been whether Plaintiff's text messages about long-term disability to Deidre Brennan (the Controller for his employer) show that his employer "knew of [his] disability," "that an accommodation was requested[,] and the employer failed to provide a reasonable accommodation." *Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007) (citing *Gaines v. Runyon*, 107

13

F.3d 1171, 1175 (6th Cir. 1997)); *see also* ECF 45, PgID 1422–23 (detailing the text messages) (citations omitted).

Here, the text messages show that Brennan knew Plaintiff needed more time before returning to work due to his cancer treatment. ECF 40-10, PgID 1226. And Plaintiff's request for an accommodation of long-term disability benefits to Brennan is a far cry from the employee in *Judge* who requested long-term disability benefits from a third-party company—not the employer. *See* 592 F. App'x at 408. At minimum, once Plaintiff requested the accommodation of long-term disability, his employer needed to engage in "the interactive process" and even had "a duty to participate in good faith." *Kleiber*, 485 F.3d at 871 (collecting cases). And whether Defendants engaged in good faith in the interactive process is a genuine issue of material fact.[3] Last, Plaintiff's employer again offered no evidence that long-term disability would have "impose[d] an undue hardship upon [it]." *Id.* at 869 (citation omitted); *see* ECF 37, PgID 670–73; ECF 42, PgID 1380–82.

In all, the summary judgment order clearly erred when it denied both of Plaintiff's failure to accommodate theories under the ADA. The Court will therefore vacate that portion of the order and the claim will proceed to trial under both theories.

---

[3] See ECF 40-13, PgID 1344 (December 5, 2017 letter about FMLA leave); ECF 40-14, PgID 1346–48 (December 7, 2017 text messages between Brennan and Plaintiff); ECF 40-15, PgID 1350 (December 12, 2017 letter from Plaintiff's doctor about his medical condition); ECF 40-16, PgID 1352 (January 8, 2018 termination letter); ECF 40-18, PgID 1361–64 (text messages between Brennan and Plaintiff about whether Plaintiff's employer received the December 12, 2017 letter).

In the end, the evidence may not show that Plaintiff has a winning ADA claim for failure to accommodate. Either way, a factfinder must resolve the questions.

III. Manifest Injustice

The Court will vacate the bonuses portion of the summary judgment order and grant Defendants leave to file a second summary judgment motion based on a need to prevent manifest injustice. ECF 45, PgID 1419. To grant relief based on a manifest injustice, the Court must have erred. *See Manifest Injustice*, Black's Law Dictionary (11th ed. 2019) (A "[m]anifest injustice" is "[a] direct, obvious, and observable error in a trial court."); *see also Kirk v. Corr. Corp. of Am.*, No. 1:16-00031, 2017 WL 3172738, at *5 (M.D. Tenn. July 26, 2017) (collecting cases). Thus, under Rule 54(b), "some harm, legal or at least tangible, [must] flow from a denial of reconsideration." *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005).

Here, allowing the bonuses claims to proceed created an obvious error because the Court had denied the unlawful termination claims under the FMLA, ADA, and ADEA. ECF 45, PgID 1420–26, 1428–36. As Plaintiff pointed out, holding a trial only on the bonuses claims "is inherently in conflict" with the Court's summary judgment order because both rely on "the same legal theories and [] the same evidence." ECF 59, PgID 1579. Because holding a trial on the bonuses claims would waste resources, and because the Court never had summary judgment briefing on the claims, the Court will correct the error by granting Defendants leave to file a summary judgment motion as to only the bonuses claims. E.D. Mich. L.R. 7.1(c)(3); *see Hescott v. City of Saginaw*, No. 10-13713, 2012 WL 13005302, at *2 (E.D. Mich. Oct. 3, 2012) (noting

15

that a court may allow a party to file a second summary judgment motion "to correct a clear error or prevent manifest injustice") (quotation omitted). Defendants may move for summary judgment no later than February 25, 2022.

Last, Plaintiff largely relied on the Court's inability to conduct a jury trial during the COVID-19 pandemic to argue that an injustice will occur and to avoid it, the Court should vacate the summary judgment order and allow the parties to submit new summary judgment briefing on all claims. ECF 59, PgID 1571–72, 1585, 89–90. But vacating the whole order is a drastic response to a limited error. Because the Court has revisited the clear errors in the summary judgment order and has scheduled a jury trial for April 20, 2022, no manifest injustice will occur. The Court will therefore deny the remaining Rule 54(b) motion.

IV.  Alternative Requests for Rule 60(b) Relief or Interlocutory Appeal Certification

The Court has granted in part and denied in part Plaintiff's Rule 54(b) motion based on the needs to correct a clear error or manifest injustice. The Court will deny Plaintiff's alternative request for relief under Rule 60(b) or to certify an interlocutory appeal under 28 U.S.C. § 1292. *Id.* at 1582–95.

"Rule 60(b) applies only to 'final' orders." *Payne v. The Courier-J.*, 193 F. App'x 397, 400 (6th Cir. 2006) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1277 (6th Cir. 1991)); *see also* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2852 (3d ed. 2021) ("But the power of a court to modify an interlocutory judgment or order at any time prior to final judgment remains unchanged and is not limited by the provisions of Rule 60(b).") (footnote omitted). "A decision is final if it 'ends the

16

litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Bd. of Trs. of Plumbers, Pipe Fitters & Mech. Equip. Serv., Loc. Union No. 392 v. Humbert*, 884 F.3d 624, 625–26 (6th Cir. 2018) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). The Court's summary judgment order does not meet the final order standard and Plaintiff even concedes that much. ECF 59, PgID 1570; 1578–79 ("The Order was not a final order.").[4] The Court will thus deny Rule 60 relief because it does not apply.

The Court will also deny the motion to certify an interlocutory appeal. To certify an interlocutory appeal under § 1292(b), Plaintiff must show: "(1) a controlling legal question is involved; (2) there is substantial ground for difference of opinion regarding it; and (3) an immediate appeal would materially advance the litigation's ultimate termination." *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 (6th Cir. 1992) (cleaned up). Because the Court will try the case in April, an immediate appeal—which would take more than a year to resolve—would not materially advance the end of the litigation. Without the last prong met, the Court must deny the § 1292(b) motion.

## CONCLUSION

When the Court clearly errs and a party pinpoints the error, the Court must correct it. The Court will set a final pretrial conference for Wednesday, April 6, 2022

---

[4] Plaintiff appeared to contend that Rule 60(b) relief is proper for non-final orders. ECF 59, PgID 1583–84 (citing *Stokes v. Williams*, 475 F.3d 732, 736–37 (6th Cir. 2007) (per curiam)). But *Stokes* involved a Rule 60(b) challenge "to overturn the earlier dismissal of [a] habeas corpus petition." 475 F.3d at 733. The challenge in *Stokes* was therefore to a final order and judgment.

17

at 2:30 p.m. in Courtroom 216. The trial will begin on Wednesday April 20, 2022 at 9:00 a.m.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion for relief from the order or for certification to the Sixth Circuit [59] is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the order granting summary judgment as to Plaintiff's failure to accommodate claim under the ADA based on direct evidence, ECF 45, PgID 1426–28, is **VACATED**.

**IT IS FURTHER ORDERED** that Defendants may **MOVE** for summary judgment as to the FMLA, ADA, and ADEA bonuses claims **no later than February 25, 2022**.

**IT IS FURTHER ORDERED** that the final pretrial conference is **SET** for **Wednesday, April 6, 2022 at 2:30 p.m. in Courtroom 216.**

**IT IS FURTHER ORDERED** that the jury trial is **SET** for **Wednesday April 20, 2022 at 9:00 a.m.**

SO ORDERED.

s/ Stephen J. Murphy, III<br>
STEPHEN J. MURPHY, III<br>
United States District Judge

Dated: February 14, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 14, 2022, by electronic and/or ordinary mail.

s/ David P. Parker<br>
Case Manager